```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-23-09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EZZI KALOMBO,

                          Petitioner,         07 Civ. 11350 (PKC)

      -against-

                                        MEMORANDUM AND ORDER

CHRISTOPHER SHANAHAN, New York City Field Office Director, United States Department of Homeland Security, Immigration and Customs Enforcement; UNITED STATES DEPARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT,

                          Respondents.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Petitioner Ezzi Kalombo seeks release from a February 27, 2007 Order of Supervision issued by the United States Department of Homeland Security Immigration and Customs Enforcement ("ICE") Office. According to petitioner, the Order improperly designates him as "ordered removed," and, through that designation, imposes conditions of supervision that conflict with a June 24, 2005 order by the Immigration Court in Newark, New Jersey that granted petitioner's application for withholding of removal. (Compl. at 4-5.) Petitioner asserts that the "continued restraint on his liberty by the [ICE]" violates his rights under the Due Process Clause of the Fifth Amendment (Compl. at 1) and he now petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. Petitioner also seeks declaratory and injunctive relief, pursuant to 5 U.S.C. § 551 et seq., 28 U.S.C.

§ 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651(a), and an award of reasonable costs and attorney's fees under 28 U.S.C. § 2412.

For the reasons outlined below, the petition is denied.

I.  Factual Background

Petitioner is a citizen of the Democratic Republic of the Congo ("DRC") who first entered the United States on or about November 16, 1992 as a non-immigrant visitor for pleasure. (Oeltjen Decl. Ex. 2, at 1.) Petitioner's entry visa expired on May 15, 1993. (Id.) On May 26, 1993, petitioner married Pascal Rosenthal, a United States citizen and resident of Rosedale, New York. (Oeltjen Decl. Ex. 3.) In October 1993, Ms. Rosenthal submitted a Petition for Alien Relative, requesting adjustment of petitioner's immigration status. (Oeltjen Decl. Ex. 4.) The same month, petitioner also submitted his own Application to Register Permanent Residence or Adjust Status. (Oeltjen Decl. Ex. 5.)

On February 23, 1995, the Immigration and Naturalization Service ("INS") ordered that petitioner's application for status as a permanent resident be denied, and it granted petitioner until March 23, 1995 to effectuate his departure from the United States.[1] (Oeltjen Decl. Ex. 7.)

On January 23, 1996, the New York District Director of the INS ordered that Ms. Rosenthal's petition be denied. (Oeltjen Decl. Ex. 6.) In an attachment to the order denying petitioner's reclassification, the INS Director concluded that Ms. Rosenthal had failed to satisfy her burden of proving petitioner's eligibility for the immigration

---

[1] Pursuant to the Homeland Security Act of 2002, Pub.L. 107-296 § 441, 116 Stat. 2135 (2002); 6 U.S.C. § 202(3), the INS ceased to exist as an independent agency within the Department of Justice on March 1, 2003, and its functions were transferred to the Department of Homeland Security ("DHS"). Duamutef v. INS, 386 F.3d 172, 174 n.1 (2d Cir. 2004). ICE, a bureau within the DHS, now bears responsibility for enforcing the immigration laws. Id.

2

benefit sought. The Director emphasized numerous discrepancies between the parties' sworn statements during their December 1994 Stokes interview and concluded that it would be "reasonable to presume that the marriage was entered into sol[el]y to accord the beneficiary an immigration benefit." (Id. at 6.)

The INS issued a warrant for petitioner's arrest on October 9, 2001. (Oeltjen Decl. Ex. 8.) The INS also issued a Notice of Custody Determination on October 9, 2001 that ordered petitioner detained in INS custody pending final determination of his case by the Immigration Court. (Oeltjen Decl. Ex. 9.) Petitioner requested re-determination of the custody order by an immigration judge. (Id.) Petitioner was detained in Paterson, New Jersey on the day the warrant was issued and released from custody on November 14, 2001, pursuant to an Immigration Bond. (Resp. Return, at ¶ 3; Oeltjen Decl. Ex. 10.)

In March 2002, petitioner filed an Application for Asylum and for Withholding of Removal. (Oeltjen Decl. Ex. 12.) In his application, petitioner explained that he was seeking asylum because he feared that he would be killed if he returned to the DRC. (Id. at 4.) According to petitioner, military forces in the DRC had killed his father, stepmother and two uncles in retaliation for the family's association with the previous president of Zaire. (Id.) If he returned to the DRC, petitioner claimed, "the military would immediately recognize me, and I would be assas[s]inated." (Id.)

Petitioner's application for asylum or withholding of removal was denied on June 11, 2003. (Oeltjen Decl. Ex. 13, at 2.) Petitioner appealed the denial to the Board of Immigration Appeals ("BIA") and, while his appeal was pending, moved to reopen the record in his case in order to present new documentary evidence in support of

his appeal. (Id. at 2-3.) On October 12, 2004, the BIA granted petitioner's motion to reopen the record and remanded his case to the Immigration Court for re-review, concluding that the new evidence submitted was highly probative and could have changed the outcome of the hearing below. (Id.)

On remand, Immigration Judge Annie S. Garcy reconsidered all of the evidence submitted in support of petitioner's application for relief, including the testimony from petitioner's prior hearing and the newly submitted death certificates for petitioner's father, stepmother and two uncles. (Oeltjen Decl. Ex. 11, at 1-2, 7.) At the continued Removal Proceeding on May 27, 2005, Judge Garcy noted that petitioner had previously conceded, during his 2003 testimony, that his application for asylum was time-barred. (Id. at 3.) Judge Garcy ordered petitioner removed from the United States and designated the DRC as the country of removal, but simultaneously granted petitioner's application for withholding of removal to the DRC. (Id. at 2, 16-17; Compl. Ex. 2.) The BIA upheld Judge Garcy's 2005 order on December 29, 2006. (Oeltjen Decl. Ex. 1; DeSantis Decl. at 3-4, ¶ 9; Resp. Return at 3, ¶ 4.) Respondents assert, and petitioner does not contest, that no further appeal from the 2005 order has been filed. (Resp. Return at 3, ¶ 4; Compl. at 2, ¶ 2 ("It is important to note that Ezzi Kalombo brings no challenge to the final order issued in the removal proceedings which had been brought against him.").)

Petitioner's Immigration Bond was canceled on February 27, 2007. (Oeltjen Decl. Ex. 14.) On the same day, ICE issued an Order of Supervision stating that, "[b]ecause ICE has not effected [petitioner's] deportation or removal during the period prescribed by law, it is ordered that [petitioner] be placed under supervision and

4

permitted to be at large" under several enumerated conditions, including restricted travel outside of the New Jersey/New York area and regular reporting to the ICE office in New York City. (Oeltjen Decl. Ex. 15 (Order of Supervision), at 1.) Petitioner has reported to ICE's New York office regularly since May 2007. (DeSantis Decl. at 4, ¶ 11.)

According to ICE's Detention and Removal Office, petitioner's removal from the United States is "not reasonably foreseeable" because the Immigration Judge did not designate an alternative country of removal when she ordered withholding of removal to the DRC. (DeSantis Decl. at 4, ¶ 10.) On April 24, 2009, Assistant United States Attorney Natasha Oeltjen wrote to this Court to confirm that petitioner remains subject to the Order of Supervision and that ICE has no immediate plans to remove him to the DRC or to any other country. (Letter of April 24, 2009 from Natasha Oeltjen, Assistant United States Attorney for the Southern District of New York, to Hon. P. Kevin Castel and Judy S. Resnick, Esq.) Ms. Oeltjen indicated in her letter that ICE had relaxed the conditions of petitioner's supervision to require reporting once every three months, and that these revised conditions might be further relaxed following petitioner's scheduled reporting on April 27, 2009. Id. Both Ms. Oeltjen and petitioner's counsel, Ms. Resnick, agree that the instant petition is now ripe for adjudication. Id.

II.     Discussion

Section 2241 of the federal habeas corpus statute empowers this Court to grant a writ on behalf of a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." Poindexter v. Nash, 333 F.3d 372, 377 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The Court's review power under section 2241

extends to constitutional challenges directed at the lawfulness of post-removal-period detention and supervision. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).

Neither party to this action disputes that petitioner is "in custody" for purposes of habeas review. (Resp. Opp. at 6 n.5; Compl. at 2, ¶ 2.) Petitioner has also exhausted his administrative appeal and does not seek to challenge the Immigration Court's final order of removal. (Resp. Opp. at 4; Compl. at 2, ¶ 2.) The issue before this Court is whether ICE's February 27, 2007 Order of Supervision violates petitioner's constitutional right to due process of law by requiring him to comply, indefinitely, with certain statutorily-authorized reporting provisions.

<u>Post-removal-period Supervision under 8 U.S.C. § 1231</u>

Section 241 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231, governs the detention and post-release supervision of aliens subject to final orders of removal. The statute provides that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (. . . referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). The statute also directs that any supervisory regulations prescribed by the Attorney General shall include provisions requiring the alien to: (i) appear before an immigration officer periodically for identification; (ii) submit, if necessary, to a medical and psychiatric examination; (iii) give information under oath about his or her nationality, circumstances, habits, associations, and activities; and (iv) obey reasonable written restrictions on his or her conduct or activities. See id.

The administrative regulation, promulgated pursuant to 8 U.S.C. § 1231(a)(3), provides that removable aliens who are released from custody beyond the removal period "shall be released pursuant to an order of supervision." 8 C.F.R. § 241.5(a) (2009). The order of supervision "shall specify conditions of supervision including, but not limited to, the following:

> (1) A requirement that the alien report to a specified officer periodically and provide relevant information under oath as directed;
>
> (2) A requirement that the alien continue efforts to obtain a travel document and assist the Service in obtaining a travel document;
>
> (3) A requirement that the alien report as directed for a mental or physical examination or examinations as directed by the Service;
>
> (4) A requirement that the alien obtain advance approval of travel beyond previously specified times and distances; and
>
> (5) A requirement that the alien provide the [INS] with written notice of any change of address . . . within ten days of the change."

Id.

Neither the statute nor the regulation limits the time period during which an alien ordered removed may be subject to an administrative order of supervision. The Supreme Court has construed 8 U.S.C. § 1231 to include implied limits on the time period during which an alien ordered removed may be <u>detained</u> following expiration of the removal period. See Zadvydas, 533 U.S. at 689 ("In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.") But the Court has not extended those limits to post-removal-period supervision. Id. at 695-96

7

(citing 8 U.S.C. §§ 1231(a)(3) and 1253) ("In these cases, we focus upon those [constitutional] limitations [to Congressional and Executive decision-making power in the immigration area]. In doing so, we nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions. . . . The choice . . . is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated.") (citations omitted). In Zadvydas, the Court emphasized that, in lieu of extended pre-removal detention, supervised release "appropriate in the circumstances" "may and should" be imposed:

> [I]f removal is not reasonably foreseeable, the [habeas] court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.

Id. at 699-700 (citations omitted).

Since Zadvydas, those few courts that have considered habeas challenges to an order of supervision in the post-removal-period context have concluded that Zadvydas supports an expansive reading of administrative authority to impose such orders. See, e.g., Nguyen v. B.I. Inc., 435 F. Supp. 2d 1109, 1115 (D.Or. 2006) ("While a statute permitting indefinite detention of an alien would raise a serious constitutional problem, Congress may remove aliens, subject them to supervision with conditions when released from detention and incarcerate them where appropriate for violations of those conditions." (citing Zadvydas, 533 U.S. at 690, 695; alterations omitted)); Mahmoud v. Cangemi, No. Civ. 05-900 (DWF/FLN), 2006 WL 1174214, at * 2 (D. Minn. May 1,

8

2006) (denying habeas relief where petitioner argued that conditions of ICE order of supervision violated due process by imposing state of constructive detention pending removal) ("[T]he Court in Zadvydas explicitly held that release on conditions is the appropriate alternative to detention . . . .").

Detention entails a complete deprivation of liberty of movement. Supervision, on the other hand, is substantially less onerous and, if the conditions imposed are reasonably related to legitimate enforcement needs, may be appropriate even if indefinite. Because the statute and regulation do not prohibit indefinite supervision of an alien who has been released pending removal and the rationale of Zadvydas does not prohibit supervision "appropriate in the circumstances," I conclude that there is no inherent temporal limitation on an order of supervision in such context. I need not consider the frequency with which it may be appropriate for the administrative agency to review the conditions either sua sponte or on application. Petitioner's conditions, as noted, have been relaxed and may further be relaxed.

### Withholding of Removal

Petitioner emphasizes in his Complaint that the Order of Supervision incorrectly designates him as "ordered removed," instead of stating that he has been granted a withholding of removal.[2] This error, petitioner implies, has triggered an administrative response inconsistent with his actual immigration status. Upon review of the relevant regulations, however, the Court concludes that a simultaneous grant of withholding and order of removal does not violate the INA's statutory regime.

---

[2] Petitioner states in his Complaint that the order of Supervision "erroneously states that Ezzi Kalombo was ordered removed to Zaire, instead of correctly stating that he was granted withholding of removal." (Compl. at 5, ¶ 8.) The Order does not designate a country of removal and indicates only that petitioner has been ordered "removed pursuant to proceedings commenced on or after April 1, 1997." (Oeltjen Decl. Ex. 15, at 1.)

9

The INA provides aliens with forms of relief from removal. Mendis v. Filip, 554 F.3d 335, 339 (2d Cir. 2009) (citing 8 U.S.C. § 1231(b)(3)(A)). Under the Act's withholding provision, the Attorney General may not remove an alien to a country if he decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion. Id. But the withholding provision only bars deportation to a particular country or countries. INS v. Aguirre-Aguirre, 526 U.S. 415, 419 (1999). A grant of withholding does not amount to permanent asylum, id. at 419-20, and it does not supersede a final order of removal. See 8 C.F.R. §§ 208.22 and 1208.22; INS v. Cardoza-Fonseca, 480 U.S. 421, 428 & 428 n.6 (1987) (distinguishing asylum from withholding of deportation) ("[Withholding] relief is 'country specific' and accordingly, the applicant here would be presently protected from deportation to Afghanistan pursuant to [the withholding of deportation provision]. But that section would not prevent his exclusion and deportation to Pakistan or any other hospitable country . . . if that country will accept him."); Matter of I-S- & C-S-, Interim Decision 3595, 2008 WL 110751, 24 I. & N. Dec. 432, 434 (B.I.A. Jan. 10, 2008) ("We note in this regard that a grant of withholding of removal is not discretionary and does not afford the respondents any permanent right to remain in the United States. The regulations make clear that a grant of withholding does not prevent the DHS from removing an alien to a country other than the one to which removal has been withheld.") (citations omitted). The Immigration Court's decision to grant withholding of removal does not, therefore, void its simultaneous order of removal or preclude the issuance of a corresponding order of supervision. The Order of Supervision

itself, designating petitioner as "ordered removed," is not inaccurate or improper and does not entitle petitioner to habeas relief.

### Conditions of Supervision

Petitioner has not raised any specific challenge to the individual provisions in his Order of Supervision. See, e.g., Compl. at 2, ¶ 2 ("The restraints on liberty which have been imposed upon the petitioner, as well as the continuing threat to physically take him into custody upon violation of specified conditions, constitute a form of official detention from which the petitioner seeks release."); id. at 3-4, ¶ 4 ("Petitioner Ezzi Kalombo seeks through this action to remove the restraints placed upon his liberty by the Department of Homeland Security . . . as well as other restrictions placed upon his actions and movement. These restraints on liberty are not normally placed upon aliens who have been granted the official status known as withholding of removal."). To the extent that petitioner intends to challenge those provisions, however, the Court notes that the selection of specific supervision terms is discretionary to the Attorney General under INA section 241 and 8 C.F.R. § 241.5(a). 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); 8 C.F.R. § 241.5(a) ("An alien released pursuant to § 241.4 shall be released pursuant to an order of supervision . . . . The order shall specify conditions of supervision including, but not limited to, the following . . . ."). Those discretionary actions are insulated from judicial review by the REAL ID Act. See 8 U.S.C. § 1252(a)(2)(B) ("[N]o court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the

Attorney General . . . other than the granting of relief under section 1158(a) of this title."); Ruiz v. Mukasey, 552 F.3d 269, 274-75 (2d Cir. 2009) (noting that judicial authority to review agency decisions in the immigration context "is expressly limited by 8 U.S.C. § 1252(a)(2)(B)" and emphasizing that courts assessing their authority to review under § 1252 must focus on "whether the text of the subchapter in which [the relevant provisions] appear 'specifie[s]' that the 'decision' is 'in the discretion of the Attorney General'") (citations omitted); Guyadin v. Gonzales, 449 F.3d 465, 468 (2d Cir. 2006) (noting that the phrase "under this subchapter" in § 1252's jurisdictional provision refers to subchapter II of Chapter 12 of Title 8 of the United States Code, which includes §§ 1151-1381).

### "Reasonable Foreseeability" of Removal

Respondents concede that, due to the absence of an alternative country designation in the Immigration Court's Order of Removal, petitioner's removal from the United States is "not reasonably foreseeable." (DeSantis Decl. at 4, ¶ 10.) The Court has taken note of this fact in reviewing the statutory and constitutional provisions discussed above, and it recognizes that the Zadvydas decision emphasized a similar administrative posture when it concluded that post-removal-period detention no longer served its purported immigration purpose. See 533 U.S. at 690-91 ("The statute . . . has two regulatory goals. . . . But by definition the first justification preventing flight is weak or nonexistent where removal seems a remote possibility at best. . . . [W]here detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed.") (citations, internal quotation marks and alterations omitted). The Court also recognizes that the Second Circuit has emphasized the same factor in applying Zadvydas to detention-related habeas claims.

See Wang v. Ashcroft, 320 F.3d 130, 146 (2d Cir. 2003) (affirming denial of habeas relief where petitioner's removal was "imminent") ("[P]ursuant to Zadvydas, [petitioner's] due process rights are not jeopardized by his continued detention as long as his removal remains reasonable foreseeable."). The Court concludes, however, that this single feature of petitioner's application cannot, by itself, support a grant of habeas relief from further supervision. Petitioner has conceded that he is removable and that he remains subject to a final order of removal affirmed by the BIA. Representatives from the supervising department of ICE have confirmed that, "[w]hen it is not possible to predict when in the future ICE will be able to effectuate an alien's removal, ICE needs a mechanism to track that alien, in order to locate the alien once removal becomes feasible." (DeSantis Decl. at 2, ¶ 4.) The terms of petitioner's supervision are minimally intrusive and rationally related to that legitimate interest. The indefinite extension of petitioner's Order of Supervision does not, therefore, independently violate petitioner's constitutional rights.

The length of petitioner's pre-removal supervision period is not knowable. A change in administration or form of government in the DRC might make removal feasible. Another hospitable nation may accept petitioner. The circumstance that petitioner ought to be removed but cannot conveniently be removed at the present time does not render supervision inappropriate under the circumstances. Requiring petitioner to report to ICE every three months conserves ICE resources in endeavoring to locate petitioner in the event removal becomes feasible. Reporting would facilitate prompt removal when circumstances warrant.

## III. Conclusion

For all of the reasons outlined above, the Court has concluded that petitioner's continued supervision under an ICE Order of Supervision does not violate his right to due process under the Fifth Amendment. For substantially the same reasons, the Court concludes that petitioner's claim for declaratory and injunctive relief must fail. The petition for a writ of habeas corpus, and all other relief, is denied. The Clerk shall enter judgment for respondents.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
June 22, 2009